UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DANTE D. FLORENCE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 14-08594 DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Dante D. Florence ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Supplemental Security Income ("SSI") benefits. The Court concludes that the ALJ gave clear and convincing reasons for rejecting Plaintiff's credibility and correctly concluded that Plaintiff has not shown that he met or equaled a listing. The Commissioner's decision is therefore affirmed and the matter is dismissed with prejudice.

///

///

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was initially found disabled on May 13, 1994, based on the child disability standards. Administrative Record ("AR") 15, 20. After turning 18, he was reevaluated under the adult disability standard. On October 20, 2010, it was determined that Plaintiff was no longer disabled and his disability benefits ceased in December 2010. AR 90-98. After he was denied reconsideration, Plaintiff requested a hearing in front of an ALJ. AR 73-85, 116-25. The ALJ issued an unfavorable decision on June 8, 2012. AR 73-85. Plaintiff's case was remanded by the Appeals Council due to concerns about whether Plaintiff had adequate representation. AR 86-89. A second ALJ held a hearing on December 10, 2013, and issued another unfavorable decision on March 10, 2013. AR 10-29.

In reaching this decision, the ALJ found that Plaintiff had the severe impairments of dysthymia and borderline intellectual functioning. AR 22. However, the ALJ discounted Plaintiff's credibility about the severity of his symptoms. AR 22-24. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: simple, routine and repetitive tasks with occasional changes in the work setting, occasional interaction with the general public, frequent interaction with coworkers and supervisors, and an avoidance of all exposure to hazards. AR 22. The ALJ then found that there were jobs in significant numbers in the national economy that Plaintiff could perform notwithstanding these limitations. AR 24.

# II.

## ISSUE PRESENTED

The parties dispute whether the ALJ erred in failing to: (1) properly assess Plaintiff's credibility; and (2) consider whether Plaintiff's impairment

met or equaled a listed impairment. See Joint Stipulation ("JS") at 2.

## III.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV.
## DISCUSSION

**A.    The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff testified at the administrative hearing to the following symptoms and limitations: a learning disorder as a result of developmental delays; depression and anxiety; discomfort around groups of people; and irritability around noise. AR 44-50. Plaintiff also testified that he was in special education in school and that he often fought with teachers and other students. Id. He told

3

the ALJ that he did not have any friends and that his mother accompanied him to all places. Id. He explained that he had trouble following directions and doing assignments. Id.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter, 504 F.3d at 1035-36. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. Bunnell, 947 F.2d at 343. To the extent that an individual's claims of functional limitations and restrictions due to alleged symptoms are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (explaining 20 C.F.R. § 416.929(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of the claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the

claimant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 & n.8 (9th Cir. 1996). Additionally, "[i]n weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted).

     Here, the ALJ provided several reasons for finding that Plaintiff was not fully credible, each of which is supported by substantial evidence in the record. First, the ALJ determined that the objective medical evidence contradicted Plaintiff's complaints about his limitations and functional restrictions. AR 23-24. After reviewing Plaintiff's medical records the ALJ concluded that "claimant does not present to his doctors with the extreme mental incapacity alleged." AR 23. Although a lack of objective medical evidence may not be the sole reason for discounting a claimant's credibility, it is nonetheless a legitimate and relevant factor to be considered. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2011); Batson v. Comm'r Soc. Sec, 359 F.3d 1190, 1196 (9th Cir. 2004) (holding that the ALJ's adverse credibility determination was proper when it considered the claimant's testimony to be contradictory and unsupported by the objective medical evidence or any persuasive reports of his doctors).

     Second, the ALJ found that Plaintiff's complaints were inconsistent with the treatment he was receiving and that Plaintiff was not adhering to a prescribed course of treatment. AR 23. The ALJ pointed out that although Plaintiff has "routine medication follow up mental treatment," Plaintiff has neither required hospitalization nor been designated as in need of a caretaker or constant supervision. AR 23. An ALJ may rely upon a claimant's conservative treatment history, unexplained or inadequately explained failure

to seek treatment, or noncompliance with treatment to provide clear and convincing evidence for an adverse credibility finding. See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (inadequately explained failure to follow a prescribed course of treatment can cast doubt on the sincerity of the claimant's testimony); see also SSR 96-7p, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible if the level of frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").

      Third, the ALJ pointed out discrepancies in Plaintiff's testimony. AR 24. The ALJ noted that contrary to his mother's assertion that he does not know how to drive and is not able to perform basic household chores, Plaintiff testified that he does not drive because they do not own a car, not because he is unable. AR 24. He also testified that he is able to make simple meals without assistance. Id. The ALJ properly relied on these discrepancies. See Tommasetti, 533 F.3d at 1039 (holding that ALJ may consider many factors in weighing a claimant's credibility, including "ordinary techniques of credibility evaluation, such as . . . testimony by the claimant that appears less than candid." (quoting Smolen, 80 F.3d at 1284)).

      Plaintiff contends that the ALJ improperly considered Dr. Stephenson's finding that Plaintiff was intentionally underestimating his abilities because Dr. Stephenson relied on the Test of Memory Malingering ("TOMM"). JS at 4-5.[1]

---

[1] The Test of Memory Malingering is a visual-recognition test designed to help mental-health practitioners distinguish between true and feigned memory impairments. See TOMM Test of Memory Malingering, MHS, http://www.mhs.com/product.aspx?gr=cli&id=overview&prod=tomm (last visited Sept. 9, 2015).

However, the TOMM's inability to definitively confirm malingering does not preclude its use as a factor in assessing credibility. The Social Security Administration's Program Operations Manual System ("POMS")—an internal policy manual—permits the consideration of symptom validity tests such as the TOMM as a non-dispositive factor, together with all of the relevant evidence in the case record. See POMS DI 22510.006(D) (Note).[2] In addition to the TOMM results, Dr. Stephenson relied on multiple factors to reach his conclusions, including his review of Plaintiff's school records, relevant background information, clinical interview, mental status examination, and the Wechsler Adult Intelligence Test-4th Edition (WAIS-IV). AR 318-19. It was therefore not error for the ALJ to rely on Dr. Stephenson's finding.

Plaintiff also contests the ALJ's reliance on Dr. Sherrill's finding that Plaintiff exerted questionable effort throughout the evaluation because she relied on incorrect information that Plaintiff was not enrolled in special education classes. JS at 6-7. However, Plaintiff's school record was not the sole factor in her determination. She based her evaluations of Plaintiff's credibility on a myriad of other factors including her observations, a complete psychological evaluation, a mental status exam, and WAIS-IV results. AR 434.
///

---

[2] Although "POMS is an internal Social Security Administration manual, for the internal use of Social Security Administration employees, and has no legal force and does not bind the Social Security Administration" (Knott v. Barnhart, 269 F. Supp. 2d 1228, 1234 (E.D. Cal. 2003) (citation omitted)), it can be persuasive authority in discerning the agency's interpretation. See Hermes v. Secretary of Health & Human Servs., 926 F.2d 789, 791 n. 1 (9th Cir.1991) (citing Evelyn v. Schweiker, 685 F.2d 351, 352 n. 5 (9th Cir.1982)). The various sections of the POMS referenced in this Order can be found on the Social Security Online database, at https://secure.ssa.gov/apps10/poms.nsf/partlist.

The ALJ properly relied on Dr. Stephenson's and Dr. Sherrill's evaluations as factors towards considering credibility because they were based on independent clinical findings. See Orn, 495 F.3d at 632 ("[W]hen an examining physician provides 'independent clinical findings . . .,' such findings are 'substantial evidence.'") (quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)); see also Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (finding that the ALJ properly "supported her conclusion that [claimant] was not credible on the additional grounds that [claimant's] allegations [of disabling anxiety] were undermined by her demeanor and presentation" as observed and described by the examining physician). However, even assuming that the ALJ erred in relying upon Plaintiff's treatment history, any error would be harmless as the other reasons proffered by the ALJ were supported by substantial evidence in the record. See Molina, 674 F.3d at 1115 ("We have long recognized that harmless error principles apply in the Social Security Act context." (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006))).

On appellate review, this Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, the Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility. See Smolen, 80 F.3d at 1284. The written record reflects that the ALJ did just that. It is the responsibility of the ALJ to determine credibility and resolve conflicts or ambiguities in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Fair, 885 F.2d at 604. It was reasonable for the ALJ to rely on the reasons stated above, each of which is fully supported by the record, in rejecting Plaintiff's subjective testimony.

B.  **The ALJ Properly Considered Whether Plaintiff's Impairment Met or Equaled a Listed Condition**

Plaintiff contends that the ALJ erred by failing to consider whether Plaintiff's severe impairment of dysthymia and borderline intellectual functioning met or equaled Listing 12.05 [Intellectual Disability]. JS at 19. Plaintiff contends that the combination of Plaintiff's severe dysthymia plus the WAIS-IV test results and the IQ scores obtained in both of the consultative examinations support a finding that Plaintiff's combination of impairments is equivalent to Listing 12.05(B) or (C). Id. at 19-22.

1.  **Applicable Law**

At step three of the sequential evaluation process, an ALJ considers whether an applicant has an impairment or combination of impairments that meets or medically equals an impairment included in the regulations' listing of disabling impairments. Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester, 81 F.3d at 828. Thus, if the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. 20 C.F.R. § 416.920(d); Sullivan v. Zebley, 493 U.S. 521, 525 (1990).

The claimant bears the burden of proving that he has an impairment that meets or equals a listed impairment. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005); Zebley, 493 U.S. at 530 (noting burden of proof rests with claimant to provide and identify medical signs and laboratory findings that support all criteria for Step 3 impairment determination). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and

duration' to the characteristics of a relevant listed impairment." Id. (quoting 20 C.F.R. § 404.1526); see also 20 C.F.R. § 416.926. "A generalized assertion of functional problems is not enough to establish disability at step three." Id. at 1100.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not satisfy Listing). An ALJ's decision that a plaintiff did not meet a listing must be upheld if it was supported by "substantial evidence." See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

### 2. Listing 12.05

Listing 12.05, the listing for intellectual disability, is met when the requirements set forth in paragraphs A, B, C, or D are satisfied. To satisfy paragraph B, a claimant must have "[a] valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.05. To satisfy paragraph C, a claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Here, the ALJ properly determined that Plaintiff's mental impairments, considered singly and in combination, did not meet or equal the criteria of Listing 12.05. AR 22. Although Plaintiff contends that he has a listing-level mental impairment, he fails to provide credible evidence to demonstrate that he meets the criteria in either paragraph B or C of the Listing. See 20 C.F.R., pt. 404, subpt. P, app.1 § 12.05; see also Zebley, 493 U.S. at 530-31 (holding that the

plaintiff has the burden of producing evidence that his impairment meets all the criteria).

Both paragraphs B and C require that Plaintiff demonstrate "[a] valid verbal, performance, or full scale IQ" in a specified range. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The ALJ found that both Dr. Stephenson and Dr. Sherrill's evaluations, based on a myriad of factors, cast doubt on the validity of Plaintiff's IQ score. AR 23-24; see Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999) (noting that medical and other evidence in the record can "cast doubt on the validity" of an IQ score). Dr. Stephenson found that "the claimant gave an inconsistent presentation" and that his performance was so low that it was clearly not credible. AR 321. Dr. Sherrill also concluded that the Plaintiff "did not appear to put forth his best effort during the evaluation." AR 439. Without being able to give an accurate determination because of Plaintiff's unreliable scores, Dr. Sherrill diagnosed an estimated borderline intellectual functioning. Id. Absent a valid IQ score within the specified ranges in paragraphs B and C, Plaintiff cannot meet all the required criteria. See Zebley, 493 U.S. at 530-31.

When considering the record as a whole, it is clear that Plaintiff has not met his burden of showing that he meets or equals each of the required elements of Listings 12.05(B) or 12.05(C). See Bowen v. Yuckert, 482 U.S. 137, 145-152 (1987) (placing burden on claimant to produce evidence that his impairment meets a listing); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of [the listed] criteria, no matter how severely, does not qualify." (footnote and citation omitted)). The ALJ reviewed all of the medical evidence in detail and correctly found, at step three of the sequential analysis, that Plaintiff has not met his burden of demonstrating that he has an intellectual disability which meets or equals Listings 12.05(B) or 12.05(C). Plaintiff is therefore not entitled to relief.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: September 10, 2015

                                                             _____
                                                             DOUGLAS F. McCORMICK
                                                             United States Magistrate Judge